UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LEON HOWARD TYSON, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:25-CV-577-GSL-AZ |
| BRIAN ENGLISH, et al., | |
| Defendants. | |

OPINION AND ORDER

Leon Howard Tyson, a prisoner without a lawyer, filed an amended complaint. ECF 6. Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Tyson alleges he has been subjected to unconstitutional conditions of confinement at the Miami Correctional Facility (MCF). On March 1, 2025, he was transferred to a new cell in L-Pod. He noticed that the toilet was full of urine, tissue, and

feces. It wouldn't flush, and drinking water was not available in his cell. He had to use a trash bag to relieve himself. He wrote to the maintenance department and to the Warden, but he didn't receive a response. He then began to feel sick from the smell and submitted a medical request form. Tyson notified Officer Turner of the issue, but Officer Turner stated it was "not his problem and that he didn't control bed moves." ECF 6 at 3.

On April 8, 2025, the toilet began to overflow, leaving "urine, defecation, nasty tissues and black pellets all over the floor." *Id*. Tyson asked Officer Turner if he could be relocated or if he could call the biohazard team, but Officer Tyson refused. Over the next two days, the toilet began to overflow again, splashing additional waste on the floors and walls. He again notified Officer Turner, but nothing was done. Tyson asked Sgt. D. Ajose to call the biohazard team to clean the cell and to call medical because the smell was making him vomit, but those requests were refused. He has continued to request medical and mental health care for his "pain and suffering" as a result of being exposed to human waste. Tyson has sued Warden Brian English, Officer Turner, and Sgt. Ajose for monetary damages. He also seeks permanent injunctive relief in the form of "put[ting] safety measures in place to ensure this does not ever happen again or to others, by cell inspection sheets of moving officer." *Id*. at 5.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to

2

adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). "An official who fails to uphold these duties violates the Eighth Amendment upon exhibiting deliberate indifference to a substantial risk of serious harm to an inmate." *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (internal quotation marks and citation omitted). Deliberate indifference encompasses both objective and subjective components:

> A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate.

*Id.* at 719–20 (internal quotation marks, citations, and brackets omitted).

Tyson alleges his cell was covered with feces and urine due to a malfunctioning toilet and that drinking water was not available inside his cell. He further alleges he was refused routine cell cleaning/maintenance, biohazard cleaning supplies, and/or a cell change by Officer Turner and Sgt. Ajose beginning on March 1, 2025. He claims they were both aware of the conditions yet refused to help in any way. Giving Tyson the benefit of the inferences to which he is entitled at this stage, he has stated plausible Eight Amendment deliberate indifference claims against these defendants. *See e.g., Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (collecting cases and establishing a feces and blood covered cell without a working sink or toilet was inhumane); *Titus v. Gomez*, No. 24-1714, 2024 WL 4947282, at *2 (7th Cir. Dec. 3, 2024) ("Although a clogged

3

toilet does not violate constitutional rights, prolonged exposure to an 'unflushable toilet[ ]' that contains 'standing feces and urine' can create inhumane conditions.") (quoting *Hardeman v. Curran*, 933 F.3d 816, 823–24 (7th Cir. 2019)); *see also Thomas*, 2 F.4th at 721 ("lack of drinking water can constitute a separate Eighth Amendment violation" in some extreme circumstances).

Tyson also alleges the defendants were deliberately indifferent to his medical needs. "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need, meaning 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Thomas*, 2 F.4th at 721–22 (quoting *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012)). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

4

Tyson alleges he began to feel sick on March 14, 2025, and started vomiting from the smell on April 10, 2025. He states he continued to request medical care for his "pain and suffering" as a result of being confined in the cell with human waste, but he was ignored. He states he wanted to see "mental health," but he doesn't explain why. These allegations are too vague to plausibly infer the defendants were deliberately indifferent to his needs. Being "sick" and having later vomited, doesn't sufficiently describe an objectively serious medical condition. He doesn't say how long the vomiting lasted, or what other symptoms he experienced. In any event, according to Taylor's allegations, the "treatment" he needed was to get away from the smell, which is encompassed by the Eighth Amendment conditions claim above. *See e.g., Thomas*, 2 F.4th at 722 (noting that "[n]ot every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim" and finding a rash and clogged pore allegedly caused by the condition of plaintiff's feces, urine, and mold-covered cell were not objectively serious medical needs); *see also Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (claim must be plausible on its face and complaint must provide adequate factual content).

Tyson has also sued Warden English, but the only allegation pertaining to him personally is that Tyson wrote a grievance asking to be moved on March 12, 2025, and he didn't receive a response. There is no general *respondeat superior* liability under 42 U.S.C. § 1983. "'[N]o prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the organization."

5

*Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) (quoting *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009)). As the Seventh Circuit has explained:

> The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

*Burks*, 555 F.3d at 595; *see also Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (stating that "[f]or a defendant to be liable under section 1983, she must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights"). Tyson's allegations aren't sufficient to subject the Warden to personal liability, so the claims against him in his individual capacity will be dismissed. *See e.g., Aguilar*, 861 F.3d at 633 (division of labor in prisons is critical); *see also Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) ("A defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged violation.").

Finally, the court must consider whether Tyson may be entitled to a permanent injunction for any ongoing inhumane conditions. The warden of a correctional facility has both the authority and the responsibility to ensure inmates are housed in conditions that comport with the Eighth Amendment. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Even so, inmates cannot dictate how such injunctive relief is provided.

*Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (The Prison Litigation Reform Act mandates that "remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right.") (internal quotation marks, brackets, and citations omitted)). Therefore, injunctive relief—if granted—must be limited to requiring correctional officials to remedy any inhumane conditions to the extent required by the Constitution.

Tyson submitted his amended complaint on September 3, 2025, involving events that happened in March and April of 2025. He doesn't identify any specific incidents after that period, and it's unclear whether he remains in the cell with the malfunctioning toilet. That said, he claims he "has continued" to request care for his "pain and suffering" as a result of his confinement in the cell with "human waste, feces, urine, unflushable toilet, and no drinking water." ECF 6 at 4. Additionally, he asks for "safety measures" to be put in place to ensure "this does not ever happen again." *Id*. at 5. Although his allegations are sparse, because it can be inferred he is still in the same cell with the same conditions, he will be given the benefit of the inferences to which he is entitled at this stage. The court will allow him to proceed against the Warden in his official capacity for permanent injunctive relief related to the conditions of his cell.

Tyson is not proceeding in forma pauperis. Therefore, the court will not serve the defendants pursuant to 28 U.S.C. § 1915(d). Rather, it is his obligation to serve the defendants with a copy of the complaint and this screening order as provided by Federal Rule of Civil Procedure 4.

For these reasons, the court:

(1) GRANTS Leon Howard Tyson leave to proceed against Officer Turner and Sgt. D. Ajose in their individual capacities for compensatory and punitive damages for being deliberately indifferent to the conditions of his cell in March and April of 2025, which included a malfunctioning toilet that spread human waste everywhere and a lack of drinking water, in violation of the Eighth Amendment;

(2) GRANTS Leon Howard Tyson leave to proceed against Warden Brian English in his official capacity for permanent injunctive relief to ensure Tyson is housed in cell conditions that comport with the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DIRECTS the clerk to sign and seal summons for Warden Brian English, Officer Turner, and Sgt. D. Ajose and send them to Leon Howard Tyson; and

(5) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden Brian English, Officer Turner, and Sgt. D. Ajose to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 16, 2025

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT